UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRICIA BASCH,

    Plaintiff,                                      Case No. 1:13-cv-00076-RHB

V.                                                  Hon. Robert Holmes Bell

KNOLL, INC.,

    Defendant.

| LAW OFFICES OF JEFFREY S. BURG | JACKSON LEWIS, LLP |
|---|---|
| Jeffrey S. Burg (P38381) | Timothy J. Ryan (P40990) |
| Attorney for Plaintiff | Linda L. Ryan (P67686) |
| 30555 Southfield Road, Suite 400 | Attorneys for Defendant |
| Southfield, Michigan 48076 | 61 Commerce Street SW, Fifth Floor |
| Fax (248) 856-1258 | Grand Rapids, Michigan 49503-4124 |
| Tel. (248) 227-5027 | (616) 940-0240 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1

Plaintiff opposes Defendant's motion for summary judgment based on the facts and arguments set forth in the accompanying Brief in support, and requests the Court to deny the motion.

          Respectfully submitted,

          Law Offices Jeffrey S. Burg, Esq.

          /s/ Jeffrey S. Burg

          _____
          By: Jeffrey S. Burg (P38381)
          Attorney for Plaintiff
          30555 Southfield Road, Ste. 400
          Southfield, Michigan 48076
          (248) 227-5027
          (248) 856-1258 fax

Dated: January 22, 2014          jburg@comcast.net

# PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(c)

## STATEMENT OF FACTS

Plaintiff was employed by Defendant furniture manufacturer from February 2, 1998 to November 11, 2011, (Exh. 1, p. 6), and was working in Defendant's paint lines department as a coordinator at the time her employment was terminated. (Id.)

Throughout her employment Plaintiff performed her duties in a manner that met or exceeded the reasonable requirements of her position.  Exh. 2, Declaration of Angela Snyder Dewall; Exh. 3, Declaration of Reynard Gamble, ¶5.

During her employment, Plaintiff suffered various job-related injuries and illnesses and required medical leave on different occasions. In May, 2009, Plaintiff requested and received FMLA intermittent leave status for a job-related condition diagnosed as stress, anxiety and attention deficit disorder. Exh. 4. This FMLA status put Defendant on notice that Plaintiff's condition was 1) a chronic condition requiring treatment (Id. at 000350); 2) a "lifetime" condition (Id.); 3) a condition which may cause "episodic rather than a continuing period of incapacity" (Id.);  and 4) a condition requiring treatment on an "as needed" basis. (Id.).

In or about December, 2010, Plaintiff suffered a job-related hand and wrist injury and requested in writing an accommodation to be able to continue working and to avoid further injury. Exh. 5.  In January, 2011, Plaintiff had surgery to treat carpal tunnel syndrome in her right hand and was on medical leave for approximately two weeks. Exh. 6. In January and February, 2011, Plaintiff availed herself of benefits under the workers compensation statute. Exh. 5.

In May, 2011, Plaintiff became paint coordinator on line three, and her supervisor became Kristie Walker. Exh. 1, p. 14. Other coordinators working at the same time as Plaintiff

3

were Jeff Gilchrist (male, age approximately 37; Exh. 7) and Dana Simili (female, approximately age 33, Exh. 7). The job of paint coordinator involved receiving parts from a warehouse, arranging or "kitting" the parts in rolling baskets according to specific customer orders, and pushing the baskets to the paint line where a reconfigurator would hang the parts on the line for painting. Exh. 1, pp. 6-8.

Plaintiff had told Walker that she had had wrist surgery and that she had to be careful how she used her hands and handled the parts. Exh. 7, Declaration of Plaintiff, ¶7. Plaintiff also discussed with Walker the fact that Plaintiff had FMLA intermittent leave status (Id.). Plaintiff also told Walker that Plaintiff had had an incident the prior year with a prior supervisor, Kelly Hunter, and had complained to upper management about Hunter. (Id.). Plaintiff also told Walker that management had instructed Plaintiff to alert them "immediately" if she was having similar problems with other supervisors. Exhs. 8a and 8b.[1] Plaintiff perceived that Walker was unhappy with the information Plaintiff had given her. Exh. 7, ¶7.

Walker exhibited hostility towards Plaintiff from the beginning. According to Angie Snyder, it was obvious that Walker did not like Plaintiff. Exh. 2, ¶ 9; *also,* Exh. 3, ¶7.

Walker's hostility towards Plaintiff manifested in Walker treating Plaintiff harshly and differently than others. Plaintiff testified that Walker made Plaintiff go through unnecessary "training" which Plaintiff perceived to be condescending and had not been required of the other coordinators before her. Exh. 1, p. 19. Walker made Plaintiff work harder than the other coordinators, such as, whereas the coordinator on another line, Dana Simili, was allowed to bring parts to the line without retrieving them herself and then kitting them, Walker made Plaintiff

---

[1] Plaintiff further noted in deposition that the Knoll harassment policy defines harassment as behavior that causes a stress, fear or anxiety. Exh. 1, p. 123; *see also,* Exh. 9 ("harassment is defined as … inappropriate behavior that causes a person to suffer distress, fear or anxiety.")

take the parts out of the racks herself and handle them one by one. Exh. 1, p. 28; *see also,* (Id. p. 161). In addition, Plaintiff testified that it was "a daily thing" that Walker would ignore Plaintiff's requests for things pertaining to work, but would go over to Jeff Gilchrist's area and do what he had asked her to do. Exh.1, p. 101.[2] Walker would also become aware that Plaintiff had gone to the bathroom and would deliberately page Plaintiff while Plaintiff was in the bathroom and question Plaintiff about it when she returned. Exh. 1, pp. 83-85. Plaintiff testified that this happened *every time* Plaintiff left her desk to go to the bathroom. (Id., p. 85).[3]

On at least two occasions, Plaintiff saw Walker laughing, with Angie Snyder, in Plaintiff's direction. Exh. 1, p. 86. Plaintiff perceived that Walker was laughing at Plaintiff to belittle her, (Exh. 1, p. 99), and Plaintiff testified: "Q. Why is it you think they were laughing? … A. I think they were laughing because they like to make fun of people and put pressure on people and stress them out. Q. People in general? A. I never seen them do it to anybody. I just know that they did it to me and what they did to me. Q. And why do you think they liked to do it to you? A. Because I'm on FMLA …" (Id.) Whereas Defendant in its motion snidely criticizes Plaintiff for engaging in baseless speculation about these laughing incidents, Angie Snyder confirms Plaintiff's perception about Walker's laughing. Exh.2, ¶10.[4]

---

[2] Plaintiff also testified that her training on the paint coordinator job, as directed by Kristie Walker, was fundamentally different than training Plaintiff had received in a prior position: "Q. And at that job you went through a similar kind of training as you did for the coordinator job? A. No. Q. Okay. What's the difference? A. I was not pressured like I was on a coordinator job doing the reconfigurator job. I cannot recall who trained me, who was there before me. Q. On what job? A. On the reconfigurator job. Q. Okay. A. But there was no like supervisor trying to disqualify me or push me to just not be able to do my job." Exh. 1, p. 31.

[3] Defendant counsel deliberately discontinued exploring this issue in Plaintiff's deposition, disallowing Plaintiff's explanation of these facts (Exh. 1, p. 85), and now ridicules Plaintiff in Defendant's motion on Plaintiff's assertion as to Kristie Walker's abuse of Plaintiff when Plaintiff would go to the bathroom.

[4] Defendant's counsel repeatedly expresses scorn towards Plaintiff and ridicule of Plaintiff's claims, including on the issue of the number of times Plaintiff responded in her deposition with "I don't recall at this time." Counsel's posture is consistent with the treatment Plaintiff received from Knoll in the workplace, were Plaintiff had protected FMLA status for the chronic, serious health condition of anxiety, stress and attention deficit. Exh. 4. As noted in Plaintiff's Declaration, Exh. 7, Plaintiff was "very nervous" and felt much pressure from Defendant's two attorneys and HR representative staring at her across the deposition table, leading to Plaintiff being unable to recall many events that happened to her in her employment with Defendant. (Id.,¶ 3). Yet, as Plaintiff also notes in her Declaration, she

On another occasion, Walker ordered Plaintiff to remove Plaintiff's personal refrigerator Plaintiff had been using before she came to Walker's paint line, whereas Walker allowed others to keep their refrigerators in the same area. Exh. 1, p. 100.  In another incident, Plaintiff had requested a plastic wrap to keep parts from sliding off when being moved; Walker did not obtain the wrap for Plaintiff. One day Plaintiff was moving some parts, and she went over a bump and three parts slid off. Walker made Plaintiff take a urine test. (Id., p. 101). The very next day, Plaintiff learned that a male employee in another area dropped an entire load of end unit shelves, and his supervisor merely helped him pick it up and he was not required to give a urine sample. (Id.).

In another incident, Plaintiff observed, "Jeff's line didn't have parts so they shut my line down to help Jeff.  But when my line is low it's my fault and I can't do my job.  Exh. 7, ¶9. And again, "Rich… from shipping… dropped off baskets in aisle… by Rich doing this he was slowing my production down.  I had told Kristy and she told his boss… they didn't do anything to him." (Id.).

On August 4, 2011 Plaintiff took an FMLA leave for a serious health condition related to stress. Exh. 10.

On August 23, 2011, Walker created an untitled document purporting to be a form of performance evaluation on Plaintiff.  Exh. 12.  According to Plaintiff and Angela Snyder, this untitled document was unusual and deviated from normal protocol at Knoll. In the document, Walker criticized Plaintiff for, among other things, "get[ting] side-tracked" and for being "not able to stay focused," which are well-known characteristics of persons with attention deficit disorder. (Id.; please see highlighted notations on document by counsel).

---

submitted discovery to Defendant in several other forms much information and admissible evidence relating to and supporting her claims. (Id., ¶¶ 2, 5, 6).  Plaintiff's case is quite unlike, therefore, the *Powell-Pickett* case Defendant argues in its motion, where the plaintiff in that case refused to give the defendant there information about her case.

On August 31, 2011, Plaintiff was injured on the job and filled out an accident report. Exh. 11. [[bs 204]]. This injury, to Plaintiff's back, stemmed from Walker having Plaintiff do heavier work than others:

> I was pulling parts out off of a rack and the racks come from the store and they have all like the shelves on there and some of them are like 72 inches long, and I was going to the bottom one like and was picking it up. It was bothering my back. It hurt my back and told them about it. Other coordinators like Dana Simili does not have to do this. She can have parts brought right from the store and put on wheels and brought to her line, and I was being treated unfairly because of it. (Exh. 1, p. 161).

On November 9, 2011, a minor event arose concerning a basket of parts Plaintiff sent to Angela Snyder for inspection. Snyder had already inspected a number of baskets from Plaintiff that day, and, on this occasion, Snyder believed that the basket needed changing and that there was a need to address the fact that different baskets were being "kitted" differently by different employees. Exh. 2, ¶ 11. Snyder therefore sought clarification from her supervisor, Kristi Walker, as to whether there should be a uniform kitting style or procedure that all the employees should follow so as to make her, Snyder's, inspection job easier to do. (Id., ¶12). Snyder had not perceived that Plaintiff had done anything wrong in kitting the basket the way she had on that occasion, and had no intent to make any kind of report to Walker that would get Plaintiff in trouble in any way. (Id. ¶13). In short, Snyder was not criticizing Plaintiff in any manner on this occasion. (Id.).

Walker, however, took the event as an opportunity to chastise and punish Plaintiff. Walker approached Plaintiff with a hostile mien and a hostile tone of voice, and immediately began addressing Plaintiff first defensively and then immediately in a loud, harsh tone. Exh. 1, pp. 145, 146. Prior to this, Plaintiff had been instructed by VP of Operations Mike Sale and by HR manager Brooke Kieft-Anderson to contact them *immediately* if Plaintiff perceived that she

was being harassed by Walker or by anyone in management. Exhs. 8 a,b. Abiding by this directive, Plaintiff, upon suddenly being approached by Walker in her hostile state, and being questioned harshly on the mundane matter of the kitted basket, told Walker that she, Plaintiff, wanted to have Dana Anthony present for whatever was the situation was that Walker was presenting. Exh. 1, p. 146. Plaintiff therefore paged Anthony and waited briefly for her to arrive. (Id., p. 147). When she did not respond, Plaintiff paged plant manager Tom Sales and desired to wait for him to arrive. (Id.) At no time during this event, while Walker sought to escalate the seriousness of the event, did Walker request Plaintiff to "do" anything, nor did Plaintiff "refuse" to do anything at Walker's request. (Id., p.146). Defendant contradicts this evidence in its motion by asserting that Walker *did* ask Plaintiff to "re-kit" the basket; in the posture of this motion under Rule 56, Plaintiff's version of the facts is to be taken as true; at the very least, whether Kristie Walker asked Plaintiff, and whether Plaintiff "refused" to re-kit the basket, is a question of fact.

Walker soon directed that Plaintiff follow her to the office in an apparent plan to punish Plaintiff for something. Plaintiff, not knowing why she was being brought to the office, began to feel again the mental and emotional pressure of the harassment she had felt from Walker for the past six months, and was crying. Exh. 1, p. 150. In the office, as Walker now began to accuse Plaintiff of insubordination, and as Sale and Kieft-Anderson joined in in upbraiding Plaintiff, Plaintiff began to feel the stress and anxiety for which she had been granted FMLA intermittent leave rights in May, 2009. (Id.; also, Exh. 13).

Plaintiff asked to be able to take FMLA leave under the circumstances before her. (Id., pp. 150-151). At first, Defendant denied Plaintiff her request for FMLA leave, (Id., p. 151) and told her she was being suspended, pending "investigation." (Id. at 144) Plaintiff insisted that she

8

had the right, however, to file an injury report for the harassment and stress she was feeling at this meeting, reminding Defendant that Plaintiff had a valid certificate of FMLA leave. (Id., pp. 15-151). Plaintiff was given an injury report to fill out, which she proceeded to do. Exh. 13. On the form, Plaintiff noted, "have been being harassed by Kristie Walker… Kristie does not listen to my issues like she does with everyone else." (Id.) Plaintiff also noted "mental stress" and circled her head as the "areas of injury". (Id.). While she was filling out the form, Plaintiff continued to be pressured by Brooke Kieft-Anderson, the HR representative, who continuously told Plaintiff she needed to "hurry up" and finish the form because Plaintiff "need[s] to get off the property." Exh. 1, p. 152.

In the next two days, Defendant did not "investigate" the incident. According to Angela Snyder DeWall, no one from Knoll came to her to ask her what if anything she did, saw or heard regarding the incident with the kitted basket. Exh. 2, ¶ 17.

On November 11, 2011, Plaintiff was terminated from her job. Exh. 14. Her termination notice indicated that Plaintiff was "asked by your direct supervisor Kristie Walker to re-kit some shelf ends in a basket," and then "You refused her request." (Id.).

Angela Snyder declares that her employment with Knoll was terminated allegedly for being "argumentative and uncooperative" with her supervisor, and that she disputes the reason given and points to the fact that she had recently been on FMLA leave and shortly thereafter she too was fired for a subjective, disputable reason. Exh. 2, ¶¶ 22-26.

In Plaintiff's Interrogatories and Requests for Production of Documents, at #5(c), Plaintiff asked of Defendant, "State the reason(s) for the termination of Plaintiff's employment." Exh. 15. In Defendant's answer to this Interrogatory, rather than answering explicitly, Defendant stated, "the information is contained in the personnel record referenced in response to Request No. 6."

(Id.). Going to Defendant's response to No. 6, which asked for a broad number and character of documents, Defendant stated, "All such documents were *included in the documents which Plaintiff produced to Defendant* pursuant to Defendant's discovery requests." (Id., p. 4). (Emphasis added.)

Thus, Defendant's formal answer to Plaintiff's discovery as to the reasons for Plaintiff's termination is that Defendant *adopts Plaintiff's materials which Plaintiff submitted to Defendant in discovery.* This is a reasonable inference from Defendant's well-considered discovery response and reflects the standard by which the facts on summary judgment are required to be assessed by the Court—taken in the light most favorable to the nonmoving party. Going further, the documents and facts, among others, which were "*included in the documents which Plaintiff produced to Defendant,*" and which Defendant declared were "the reason(s) for the termination of Plaintiff's employment," included Exhibits 6, 10, 11, 12,(with references to Plaintiff 's attention deficit condition), and 13. Collectively, these documents should be held, by virtue of Defendant's discovery responses, to establish that Plaintiff's 2011 injury reports, FMLA leaves for stress, and complaints of harassment from Kristie Walker, were "the reason(s) for the termination of Plaintiff's employment."

## LAW AND ARGUMENT

**I     Standard of Review**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(A); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving

party to show that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c)(1*); Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

**II     Plaintiff's evidence establishes prima facie and pretext evidence of retaliation under the FMLA.**

As noted, Defendant's discovery responses admit that Plaintiff's 2011 injury reports, FMLA leaves for stress, and complaints of harassment from Kristie Walker were "the reason(s) for the termination of Plaintiff's employment." This should be enough to establish questions of fact and to deny Defendant's motion. In addition, besides Defendant's admissions, Plaintiff's evidence establishes a question of fact as to the connection between her protected activity under the FMLA and her termination from employment. Defendant misconstrues the nature of a prima facie case under the FMLA and its motion does not even properly address the issues Plaintiff has raised in this FMLA action. Defendant's motion as to the FMLA should be denied.

The FMLA, 29 USC §2617(a)(2), makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. 2615(a)(1). An additional goal of the FMLA is to allow job security to employees who are absent or take leave for a serious health condition or a chronic serious health condition. See 29 U.S.C. § 2601 (finding that there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods); see also Id. § 2612(a)(1)(D). The Sixth Circuit recognizes two distinct theories for recovery under the FMLA: (1) the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the

"retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a) (2). *Hoge v. Honda of America Mfg., Inc.,* 384 F.3d 238 (6th Cir. 2004).

Any claim that an employer unlawfully interfered with an employee's FMLA rights, must show each of the following: (1) she is a FMLA-eligible employee; (2) the defendant is an employer under the FMLA; (3) she was entitled to take FMLA leave; (4) she gave notice of her intention to take leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA. *See* § 2612(a)(1)(D). To establish a prima facie claim for retaliation under the FMLA, a plaintiff is required to show that: 1) she availed herself of a protected right under the FMLA by notifying [her employer] of her intent to take leave; 2) she suffered an adverse employment action; and 3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Edgar v JAC Products, Inc*, 443 F.3d 501, 508 (CA 6, 2006).

There is no dispute here that Defendant is an employer under the FMLA, that Plaintiff was eligible for FMLA leave both in August, 2011, when she was last granted it, see Exh. 10, and on November 9, 2011, when she gave notice of her intent to take leave but was denied. Exh. 13; *see also* Exh. 1, pp. 150-151. Defendant does not challenge these first four elements of Plaintiff's prima facie case of FMLA interference. *See,* 29 U.S.C §2612(a)(1)(D). Defendant also does not challenge Plaintiff's assertion that on November 9, 2011, she asked for FMLA leave and she was denied by Defendant. Exh. 1, pp. 150-151. Defendant, in fact, completely ignores and does not challenge Plaintiff's claim related to violations of the FMLA regarding Plaintiff's lifetime condition of chronic stress, anxiety and deficit disorder (Exh. 4; Complaint, ¶11). In *Pierce v. Teachers Fed. Credit Union Foundation,* No. 09-780 (JNE/ FLN), 2010 WL 550998 (D. Minn. Feb. 9, 2010), the U.S. District Court for the District of Minnesota held that stress that

causes a mental health condition constitutes a "chronic serious health condition." The U.S. District Court for the Middle District of Georgia also found that job-related stress causing insomnia, anxiety attacks, and depression raised a question of fact about whether the employee had a serious medical condition under the FMLA. *See, Snelling v. Stark Props*., No. 5:05CV46DF, 2006 WL 2078562, at *9 (M.D. Ga. July 24, 2006). Defendant speaks only of Plaintiff's condition of carpal tunnel syndrome in its request for dismissal of Plaintiff's case. Plaintiff clearly pled FMLA rights pursuant to her treatment "for a condition of job-related anxiety disorder." Complaint, ¶ 11. Defendant's counsel inquired as to Plaintiff's stress and anxiety disorder in other parts of Plaintiff's deposition; *see,* Exh. 1, pp. 154; 172-173; 179-180; 181.

Plaintiff also clearly testified that when on November 9, 2011, after Plaintiff was subjected to loud and harsh treatment by Kristie Walker and others, Defendant's HR representative Brooke Kieft-Anderson was also ignoring Plaintiff's protected FMLA status:

> Where were we at, then I went downstairs. I filled out an accident report on Kristi Walker about stress, because she stressed me out. **And Brooke kept saying is this about your wrist. And I said no.** And she kept rushing me and tried to read what I was doing. And she kept telling me you need to hurry up, because you need to get off the property. So, I wrote it out a fast as I could. Exh. 1, p. 154. (Emphasis added.)

Plaintiff's FMLA leaves of January, June, and August, 2011 establish that Plaintiff availed herself of protection under the Act. Where Plaintiff received an unusual criticism of her performance approximately 8 days after her return from leave, see Exh. 12, and where within the criticism is articulated some of the very issues for which Plaintiff had FMLA protection-- "get[ting] side-tracked," "not able to stay focused")-- a connection between Plaintiff's condition and leave status and retaliation on the part of Defendant is established. It was then less than three months later that Plaintiff would be fired for a subjective and disputed reason. Exh. 14. The

Sixth Circuit recognizes questions of fact of causal connection to retaliation, where adverse acts follow protected conduct within three months, especially when the temporal evidence is joined by other evidence; *see, Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004)*(three-month proximity was sufficient); *Asmo v. Keane, Inc*., 471 F.3d 588, 594 (6th Cir. 2006) (two months); *Goller v. Ohio Dep't of Rehab. & Corr*., 285 F.App'x 250, 257 (6th Cir. 2008) (two months); *also, Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000), ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." In addition, it is undisputed that Plaintiff requested FMLA leave on November 9, 2011, was denied it, and was terminated two days later. Because Plaintiff's claim of interference and retaliation under the FMLA is both supported by evidence and admitted by Defendant, and because Defendant's motion does not even challenge Plaintiff's FMLA claim in relation to Plaintiff's anxiety disorder, this claim should be sent by the Court to a jury for trial.

**III**     **Plaintiff has established prima facie and pretext evidence under the PWDCRA and the ADA and Defendant's motion should be denied**

[Plaintiff does not abandon this argument, but is unable to complete it at this time, and will move the Court for leave to supplement this brief]

**IV**     **Plaintiff has established prima facie and pretext evidence under Title VII and ELCRA for gender and age discrimination, and Defendant's motion should be denied.**

[Plaintiff does not abandon this argument, but is unable to complete it at this time, and will move the Court for leave to supplement this brief]

      For the foregoing reasons and for reasons to be set forth in a supplemental brief, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment.

                                Respectfully submitted,

                                LAW OFFICES JEFFREY S. BURG

                              By: */s/ Jeffrey S. Burg*
                                    JEFFREY S. BURG (P38381)
                                    Attorney for Plaintiff
                                    30555 Southfield Road, Suite 400
                                    Southfield, MI 48076
                                    (248) 227-5027

Dated: January 22, 2014


CERTIFICATE OF SERVICE
The undersigned certifies that a copy of
the foregoing document was served
via e-filing to the attorneys of record herein on January 22, 2014.

*/s/ Jeffrey S. Burg*
Jeffrey S. Burg