UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRICIA BASCH,

       Plaintiff,

v.

KNOLL, INC.,

       Defendant.
_____/

File No. 1:13-CV-76

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This action alleging nine separate counts of discrimination and retaliation under federal and state law based on disability, the Family Medical Leave Act, gender, and age is before the Court on Defendant's motion for summary judgment. (Dkt. No. 31.) For the reasons that follow, Defendant's motion will be granted.

## **I.**

Plaintiff Tricia Basch was an employee of Defendant Knoll, Inc. from February 2, 1998, until her discharge on November 11, 2011. Plaintiff's date of birth is August 20, 1967. (Pl. Ex. 4.)[1] Accordingly, at the time of her discharge she was 44 years old.

In November 2011 Plaintiff was working in Defendant's paint lines department as a coordinator. On November 9, 2011, Plaintiff delivered a basket of parts to co-worker Angela

---

[1] Plaintiff's exhibits referenced in this opinion are found in Docket Nos. 40-43. Defendant's exhibits referenced in this opinion are found in Docket Nos. 32-34.

Snyder for inspection. Snyder rejected Plaintiff's basket because she thought it should have been arranged differently. Because there was no protocol on how to arrange baskets, and because each employee kitted their baskets differently, Snyder brought the issue of uniform kitting to the attention of Plaintiff's and Snyder's supervisor, Kristie Walker. (Snyder Decl. ¶ 11.) Walker raised her voice at Plaintiff and told her to re-kit her basket. Plaintiff responded that she wanted a manager present. Plaintiff left the area to page one manager, and when she received no response, she paged a second manager. As a result of her failure to re-kit the basket as directed, Plaintiff was placed on suspension pending an investigation. (Basch Dep. 144-50.) Plaintiff filed an injury report claiming she was being harassed by her supervisor. (Pl. Ex. 13.) Plaintiff was discharged on November 11, 2011, for insubordination. (Pl. Ex. 14.)

Plaintiff alleges in her complaint that after August 2011, Defendant treated her harshly and differently from others in the following ways:

   a. Scrutinizing Plaintiff's work excessively and unfairly;
   b. Refusing Plaintiff the same training provided to others;
   c. Not allowing Plaintiff to rotate among jobs, as allowed others;
   d. Not allowing Plaintiff the opportunity for overtime, as allowed others;
   e. Not allowing Plaintiff to use the restroom without scrutiny and suspicion;
   f. Speaking harshly to Plaintiff and using obvious dismissive and disrespectful body language towards Plaintiff;
   g. Discharging Plaintiff for alleged insubordination where none had occurred, and where others had clearly been insubordinate and were not disciplined in any manner.

(Dkt. No. 1, Compl. ¶ 17.) Plaintiff alleges that these "adverse employment actions" were "intentional, were done with malice or with reckless indifference to Plaintiff's rights, and

2

were taken because she was perceived by Defendants as disabled due to her wrist and hand condition, because of her job-protected FMLA leaves of absence, because of her gender and age, and because she complained about discrimination." (Compl. ¶ 19.) Plaintiff has alleged the following claims: Americans with Disabilities Act ("ADA") discrimination (Count 1); ADA retaliation (Count 2); Persons with Disabilities Civil Rights Act ("PWDCRA") discrimination (Count 3); PWDCRA retaliation (Count 4); Elliott-Larsen Civil Rights Act ("ELCRA") gender discrimination (Count 5); ELCRA retaliation (Count 6); Family and Medical Leave Act ("FMLA") retaliation (Count 7); ELCRA age discrimination (Count 8); and Title VII gender discrimination (Count 9).

Defendant has moved for summary judgment on all nine counts of Plaintiff's complaint. Plaintiff opposes the motion. Plaintiff has responded to Defendant's arguments with respect to her FMLA claim, but as to her claims for disability discrimination and retaliation under the PWDCRA and the ADA, and for gender and age discrimination under Title VII and the ELCRA, she states: "Plaintiff does not abandon this argument, but is unable to complete it at this time, and will move the Court for leave to supplement this brief." This Court has already granted Plaintiff two extensions of time to respond to Defendant's motion. (Dkt. Nos. 36, 39.) On the occasion of the second extension, the Court explicitly advised Plaintiff that "no further extension shall be granted." (Dkt. No. 39.) To date, Plaintiff has not moved to supplement her brief, and the scheduled final pretrial and trial dates are imminent. The Court will accordingly rule on Defendant's motion with respect to

3

all of Plaintiff's claims at this time without the benefit of a response from Plaintiff on the majority of Plaintiff's claims.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas*

*v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252. The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

**A. FMLA Claim**

In Count 7 Plaintiff alleges a violation of section 105(a)(2) of the FMLA 29 U.S.C. § 2615(a)(2) which provides:

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a)(2); Compl. ¶ 33. The FMLA's discrimination provision "prohibits employers from taking adverse employment actions against employees based on the employee's exercise of FMLA leave." *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 401 (6th Cir. 2008). This court applies the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to discrimination/retaliation claims under the FMLA. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). To establish a prima facie case of FMLA retaliation, Plaintiff must show that

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the

protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). "[O]nce a plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action, and if the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). "Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008)

Plaintiff contends that she has made out a prima facie claim of FMLA discrimination or retaliation because Defendant has admitted that she was terminated as a result of her 2011 injury reports, FMLA leaves for stress, and complaints of harassment. (Pl. Resp. 10-11.) According to Plaintiff, this should be enough to establish questions of fact for trial.

Plaintiff's argument misrepresents the record. Defendant stated in response to Plaintiff's interrogatories that the reason for her termination is contained in Plaintiff's personnel record. (Pl Ex. 15, Answ to Interrog. 5(c).) Plaintiff's personnel record includes a November 11, 2011, letter from Michael Sales clearly stating that Plaintiff was insubordinate to her supervisor on November 9, 2011, and that "[b]ased on this incident and

6

your prior history of insubordination, your employment with Knoll Inc. has been terminated effective today, November 11, 2011." (Pl. Ex. 14) Plaintiff has not identified any direct or implicit admission that Plaintiff was terminated because of injury reports, use of FMLA leave, or complaints of harassment.

In the alternative, Plaintiff contends that she has presented sufficient evidence to make out a prima facie case under the FMLA. She points to evidence that she took leave under the FMLA in May 2009 to address stress, anxiety, and attention deficit conditions (Dkt. No. 40, Pl. Ex. 4), in January and February 2011 for carpal tunnel surgery (Pl. Ex. 5), and in August 2011 for undisclosed medical reasons (Pl. Ex. 10). On August 31, 2011, she filed a report of an on-the-job injury to her shoulder. (Pl. Ex. 11.) On November 9, 2011, she filed another report of an on-the-job injury to her head as a result of being harassed by her supervisor, Kristie Walker. (Pl. Ex. 13.) She has also testified that she requested FMLA leave at that time, but was denied FMLA leave because Defendant suspended her. (Basch Dep. 150-51.) She has also presented evidence that Kristie Walker, her supervisor, treated her harshly, condescendingly, and differently from others. (Basch Dep. 19, 28, 83-85, 99, 100, 101,

As a preliminary matter, only Plaintiff's discharge rises to the level of an adverse employment action. An "adverse employment action" is one that affects employment or alters the conditions of the workplace. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, (2006).

7

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000) (quoting *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir.1999)). De minimis employment actions are not materially adverse and are accordingly not actionable. *Id.* at 462. *See, e.g. Novotny v. Elsevier*, 291 F. App'x 698, 703 (6th Cir. 2008) (affirming district court's finding that allegations that plaintiff's calendar was closely scrutinized, that she was left off of out-of-office emails, that she was referred to executive coaching, that she was pushed for inputs on her development plan, and that she was placed on a corrective action plan were insufficient to show that she suffered an adverse employment action); *Monak v. Ford Motor Co.*, 95 F. App'x 758 (6th Cir. 2004) (holding that the plaintiff's claims that she was not permitted to return to the same shift and job she had before going on medical leave, and that she was screamed at, unfairly criticized, and treated rudely by several supervisors, did not amount to an adverse employment action).

Plaintiff claims that she was treated differently with respect to the scrutiny given to her work, the training she received, her ability to rotate among jobs, her opportunity for overtime, and her ability to use the restroom without scrutiny and suspicion She also claims that she was treated in a hostile and disrespectful manner. However, she has not provided

any evidence that these actions resulted in a detrimental change in her pay, benefits, or on-the-job hours.[2] These claims accordingly fall in the de minimis category. They may be relevant to some portions of Plaintiff's claim, but they do not constitute actionable adverse employment action. The only actionable adverse employment action Plaintiff has identified is her discharge.

Plaintiff was discharged on November 11, 2011, after she took FMLA leave in January, June, and August 2011. Plaintiff asserts that she has established a causal connection because she was terminated within three months of her last FMLA leave.

"The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). "[I]n some cases temporal proximity may be sufficient to establish causation." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009).

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the

---

[2] Plaintiff's testimony that she was not given overtime after her carpal tunnel surgery is not evidence of an adverse action because she acknowledged that she was on medical restrictions that limited her to 8 hours of work per day. (Basch Dep. 50, 54, 68.) Plaintiff's testimony that Joe Colburn got two hours of overtime that she thought she should have gotten is not evidence of adverse action because it occurred approximately a year before her termination, and pre-dated the FMLA leave that she contends motivated the adverse action. (Basch Dep. at 71-74.)

9

subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Plaintiff contends that three months is sufficient proximity to establish causation. *See Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that termination three months after request for FMLA leave, together with evidence of supervisor's anger over the leave-taking was sufficient to raise a prima facie case of causation); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that court could infer a retaliatory motive based on termination three months after protected activity).

Plaintiff's causation argument raises the question of how to measure temporal proximity. It appears that because Plaintiff filed for FMLA leave on multiple occasions, temporal proximity should be measured from May 2009, when Plaintiff first took FMLA rather than from August 2011 when she last took FMLA leave because the earlier FMLA leaves did not result in any adverse action. *See Hall v. Ohio Bell Tel. Co.*, 529 F. App'x 434, 441 (6th Cir. 2013) (holding that the "better measurement of temporal proximity is three years – the time between Hall's first FMLA request and her termination – because the earlier FMLA investigations did not result in any adverse employment action"). Under this measurement, there can be no inference of causation based on temporal proximity.

Plaintiff relies on Walker's August 23, 2011, evaluation of Plaintiff's performance as further evidence of causation. On the "evaluation form" Walker noted, among other

things, that Plaintiff had a tendency to get side-tracked and was not able to stay focused. Plaintiff contends that this evaluation is evidence of FMLA discrimination because it was performed within two weeks of her return from FMLA leave, it deviated from the normal protocol at Knoll, and criticized her for "well-known characteristics of persons with attention deficit disorder." (Pl. Br. at 6; Pl. Ex. 12.)

Plaintiff's argument lacks merit for at least three reasons. First, the evidence does not support Plaintiff's argument that the form deviated from normal protocol. Plaintiff began a new job as a coordinator upon her return from FMLA leave. Plaintiff testified that the form was developed soon after she began her new job as a coordinator, that it included things she needed to improve on, and that once she learned her tasks "that was the end of [the list]." (Basch Dep. 140-43.) Second, Plaintiff's argument misunderstands the purpose of the FMLA. The FMLA does not entitle an employee to any special accommodation at work as a result of a health condition. It merely entitles eligible employees to "up to twelve workweeks of leave during any twelve month period if the employee has a 'serious health condition that makes the employee unable to perform the functions' of her job." *Ritenour v. Tenn. Dep't of Human Servs.*, 497 F. App'x 521, 529 (6th Cir. 2012) (quoting 29 U.S.C. § 2612(a)(1)(C), (a)(1)(D)). Third, the FMLA certification that Plaintiff relies on expired on November 18, 2009. (Pl. Ex. 4, Page ID 314.) Plaintiff has not produced any evidence that she ever provided an updated medical certification. The Court finds that Plaintiff has failed to establish a prima facie case of FMLA retaliation and that Defendant is accordingly

entitled to summary judgment on this claim.

However, even if even if Plaintiff had established her a prima facie case, Defendant is nevertheless entitled to summary judgment on Plaintiff's FMLA retaliation claim because it has articulated a legitimate non-discriminatory reason for the discharge and Plaintiff has not come forward with evidence sufficient to create an issue of fact for trial as to pretext.

Plaintiff was advised that she was terminated based on her insubordination on November 9, 2011, and her previous history of insubordination. (Pl. Ex. 14.) There is no dispute that insubordination is identified as a basis for termination in Defendant's work rules. Defendant's Rules of Conduct provide that insubordination, including failure to carry out definite instructions or assignments is "extremely serious misconduct and may result in immediate discharge." (Def.'s Ex. 2.) Because Defendant has provided a legitimate non-discriminatory reason for Plaintiff's discharge, the burden shifts back to Plaintiff to prove that Defendant's explanation is pretextual. *Whitfield*, 639 F.3d at 259.

Even if Plaintiff's temporal proximity argument was sufficient for her prima facie case, it is not sufficient to establish pretext. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."); *see also Cox-Frietch v. Ohio Bureau of Workers' Comp.*, 507 F. App'x 561, 564 (6th Cir. 2012) (same); *Krumheuer v. GAB Robins N. Am., Inc.*, 484 F. App'x 1, 5 (6th Cir. 2012) (same). "Pretext may be established 'either directly by persuading the [trier

12

of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392-93 (6th Cir. 2008) (quoting *Burdine*, 450 U.S. at 256). "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Id.* at 393. "[T]he plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Id.* at 393 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir.2003) (en banc)).

Plaintiff has come forward with no evidence that Defendant made any negative comments about her use of FMLA leave. Her only basis for suggesting that her use of FMLA leave rather than insubordination was the real reason for her discharge is that she was acting consistently with directions from Defendant. Plaintiff does not deny that she failed to rekit the basket as directed by her supervisor. (Basch Dep. 144-50.) She claims, however, that she was justified in not doing so because she had been directed by Michael Sale, Vice President of Operations, to immediately bring her concerns concerning unequal or threatening behavior to his attention. In support of this argument, Plaintiff relies on two letters from Sale. On January 4, 2010, Sale explained that he was upholding the December

23, 2009, written warning against Plaintiff for insubordination. (Pl. Ex. 8a.) In the body of that letter, and in response to Plaintiff's non-specific assertion that she felt she was being treated differently than others, Sale wrote: "If you have a specific incident that I can investigate, I would appreciate your bringing it to my attention immediately after it happens." (Pl. Ex. 8a.) On February 16, 2010, in response to Plaintiff's February 11, 2010, letter asserting that she felt threatened and afraid to be around her supervisor Kelly Hunter due to an incident on January 28, 2010, Sale advised that, after investigating, he had determined that nothing inappropriate had occurred. He also indicated that "In the future, please bring your concerns to our attention immediately so that we can take appropriate action in a timely manner." (Ex. 8b.) Plaintiff contends that in light of Sale's letters to bring her concerns to his attention "immediately," she was justified in not following her supervisor's directions until she had contacted someone in management.

Plaintiff's literal and strained interpretation of Sale's letters as justification for her failure to follow her supervisor's directions is not sufficient to suggest that the reason given by Defendant for her discharge was false, that it was not the actual reason, or that it was insufficient to explain Defendant's decision to terminate her employment. A difference of opinion on what it means to report issues "immediately" does not suggest that it was more likely than not that the real reason for her discharge was retaliation for her use of FMLA leave.

Plaintiff has not come forward with any evidence that Defendant's stated reason for

14

her termination – insubordination – was pretext for any kind of discrimination, much less that it was pretext for discrimination based on her use of FMLA leave. Defendant is accordingly entitled to summary judgment on Plaintiff's FMLA claim.

## B. Remaining Claims

As noted above, Plaintiff has presented no argument on her remaining discrimination and retaliation claims. These claims, like her FMLA claim, are not supported by direct evidence, and are accordingly analyzed under the *McDonnell Douglas/Burdine* burden-shifting framework. *See*, *e.g.*, *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (disability claim under ADA); *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (ADA retaliation claim); *Burzynski v. Cohen*, 264 F.3d 611, 621 (6th Cir. 2001) (age discrimination claim under ADEA); *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998) (Title VII gender discrimination claim); *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001) (age and gender discrimination claims under ELCRA); *Bachman v. Swan Harbour Ass'n*, 653 N.W.2d 415, 436-37 (Mich. Ct. App. 2002) (PWDCRA discrimination and retaliation claims); *Meyer v. City of Center Line*, 619 N.W.2d 182, 188 (Mich. Ct. App. 2000) (ELCRA retaliation claim).

To make out a prima facie case of discrimination under *McDonnell Douglas*, Plaintiff is generally required to show: (1) that she is a member of a protected class; (2) that she was subjected to an adverse employment action; (3) that she was otherwise qualified for the position; and (4) that she was treated differently from or replaced by a similarly situated

15

person who was not a member of the protected class. *See*, *e.g.*, *Burzynski*, 264 F.3d at 621.

Plaintiff has come forward with some evidence that other employees who failed to do what they were asked to do were not terminated. (Pl. Ex. 2, Snyder DeWall Decl. ¶ 29; Pl. Ex. 3, Gamble Decl. ¶ 6.)[3] All of the employees were male. Plaintiff has not, however, come forward with any evidence that they were not members of her protected group based on age or disability. Neither has she come forward with any evidence that they were similarly situated. A plaintiff is not required to demonstrate an exact correlation with the employee receiving more favorable treatment for the two to be considered "similarly-situated." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). However, she must show that they are similar in "all of the relevant aspects." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994). Factors to consider include whether the individuals "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). Plaintiff has made no attempt to demonstrate that any of the individuals referenced by DeWall or Gamble was similarly situated to her with respect to disciplinary record, responsibilities, length of employment, supervisor, or conduct. Plaintiff's own work history includes a verbal warning

---

[3] Although DeWall and Gamble have also asserted that the referenced individuals were not punished at all for not doing what they were asked to do, neither DeWall nor Gamble was in a position to have personal knowledge as to these employees' personnel records.

for being away from her work area without permission, a last chance agreement for falsely reporting the circumstances of an incident involving another associate, a verbal written warning for failing to give timely notification of her absence, a verbal warning for absenteeism, a verbal warning for disregard of prescribed work methods, systems and procedures, and a written warning for insubordination. (Def.'s Exs. 3-8.) Especially relevant to Plaintiff's termination was her prior history of insubordination. Yet, Plaintiff has made no showing that any of the other individuals had a prior history of insubordination.

Because Plaintiff has not shown that she was treated differently than similarly situated individuals outside her protected group, she has failed to make out a prima facie case of discrimination based on disability, age, or gender.

Plaintiff's disability discrimination claims fail for the additional reason that she has not shown that she has a disability as defined by the ADA or the PWDCRA. "'A prima facie case of disability discrimination requires the plaintiff to prove that: (1) he is an individual with a disability; (2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodations; and (3) he was discharged solely by reason of his handicap.'" *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 798 (6th Cir. 2006) (quoting *Williams v. London Util. Comm'n*, 375 F.3d 424 (6th Cir.2004) (quotation and citation omitted). For purposes of the ADA and the PWDCRA,[4] a disability is an impairment

---

[4] Resolution of a plaintiff's ADA claims will generally resolve the plaintiff's PWDCRA claims because Michigan courts interpret the PWDRCA in accordance with the ADA. *Cassidy v. Detroit Edison*, 138 F.3d 629, 634 n.3 (6th Cir.1998).

17

that substantially limits performance of a major life activity. *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008); *Chmielewski v. Xermac, Inc*, 580 N.W.2d 817, 821 (Mich. 1998).

Plaintiff alleged in her complaint that Defendant discriminated against her "because she was perceived by Defendants as disabled due to her wrist and hand condition." (Compl. ¶ 19.) The record reflects that Plaintiff was off of work for two weeks for carpal tunnel surgery, and that upon her return to work, her only restriction was that she could not work overtime. In response to Defendant's motion, Plaintiff does not attempt to argue that her carpal tunnel condition was a "disability" or that Defendant perceived her as disabled as a result of it. Instead, she asserts that she was disabled or perceived to be disabled as a result of her chronic stress, anxiety, and attention deficit disorder that was expected to last a life time. (Pl. Resp. at 3; Pl. Ex. 4.) Defendant objects to Plaintiff's raising, for the first time in response to the summary judgment motion, a new "disability" based on attention deficit disorder.

Plaintiff referenced a job-related anxiety disorder in her complaint, and her 2002 FMLA certification referenced a chronic stress, anxiety, and attention deficit disorder. (Compl. ¶ 11; Ex. 4.) However, the only "disability" Plaintiff referenced in her complaint with respect to her disability discrimination claim was her wrist and hand condition. (Compl. ¶ 19.) Plaintiff did not allege that Defendant perceived her as disabled due to an anxiety or attention deficit disorder. Accordingly, Plaintiff did not state a disability discrimination

18

claim based on an anxiety or attention deficit disorder. Moreover, Plaintiff has not presented evidence to suggest that this anxiety or attention deficit disorder substantially limited a major life activity, or that it was so perceived.

Plaintiff has also alleged retaliation under the ADA, the PWDCRA, and the ELCRA. To make out a prima facie case of retaliation under any of these statutes, Plaintiff must first show that she engaged in a protected activity. *Penny*, 128 F.3d at 417 (ADA); *Bachman*, 653 N.W.2d at 437 (PWDCRA); *Meyer*, 619 N.W.2d at 188 (ELCRA). Plaintiff has failed to demonstrate that, before her discharge, she opposed a violation of the ADA, the PWDCRA, or the ECLRA, or that she made a charge, filed a complaint, or testified, assisted, or participated in an investigation or proceeding under any of these acts. Accordingly, because the evidence does not establish that Plaintiff participated in a protected activity, Plaintiff has failed to make out a prima facie case of retaliation under any of the acts.

Finally even if Plaintiff had made out a prima facie case under any of her remaining discrimination and retaliation claims, all of these claims would fail because Defendant has articulated a legitimate non-discriminatory reason for the discharge and Plaintiff has not come forward with evidence sufficient to create an issue of fact for trial as to pretext. Plaintiff has come forward with no evidence to suggest that her discharge was more likely motivated by her gender, her age, or her physical limitations, as opposed to her insubordination.

For all of the reasons stated in this opinion, Defendant's motion for summary judgment will be granted and judgment will enter in favor of Defendant on all of Plaintiff's claims.

An order and judgment consistent with this opinion will be entered.


Dated: <u>March 10, 2014</u>  	/s/ Robert Holmes Bell  
ROBERT HOLMES BELL  
UNITED STATES DISTRICT JUDGE